UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| V. | ) | No. 2:08-CR-16 |
| | ) | Jordan/Inman |
| GARY MOORE | ) | |

## **REPORT AND RECOMMENDATION**

This defendant is indicted for various offenses involving cocaine and crack cocaine. He has filed a motion to suppress certain evidence which he anticipates the United States will introduce against him. (Doc. 56). This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on July 10, 2008.

On September 27, 2007, defendant was a passenger in a vehicle driven by one of his co-defendants, Melissa Moore. Ms. Moore ran a stop sign in Chattanooga, Tennessee, which was observed by a Chattanooga police officer. As a result, the police officer effected a traffic stop, ultimately resulting in the discovery on defendant's person of $425.00 in currency (wrapped in a rubber band) and 58 grams of crack cocaine.

Defendant argues that the traffic stop persisted for longer than was reasonably necessary to issue the driver a traffic citation, as a result of which all incriminating evidence discovered thereafter should be suppressed.[1] He also argues "that the initial traffic stop was not supported by probable cause and/or [sic] reasonable suspicion and that the ensuing detention and search of defendant were

---

[1] *See, e.g., United States v. Mesa*, 62 F.3d 159 (6th Cir. 1995).

consequently tainted and unconstitutional."

Lastly, defendant argues that the video recording of the traffic stop is of such poor quality that it is impossible to identify any of the persons appearing in the recording, as a result of which the recording should be suppressed.

Sergeant Robert Lewis, an officer with the Chattanooga Police Department, was the only witness who testified.

During the evening hours of September 27, 2007, Sergeant Lewis observed a silver Chevrolet Malibu about which he had just received a communication from Detective Hixon of the Chattanooga Police Department. Specifically, Detective Hixon advised Sergeant Lewis that the occupants of this vehicle had just participated in a drug transaction and that there were 10 ounces of crack cocaine in the vehicle. Detective Hixon told Sergeant Lewis that he wanted the car stopped. Sergeant Lewis personally observed the vehicle run two successive stop signs. Not only was this testimony not contradicted in any way, Sergeant Lewis was an extremely creditable and forthcoming witness. He is believed, and nothing else in this regard need be said, other than to state that there clearly was probable cause to believe a traffic violation had occurred. Even if Sergeant Lewis had an "ulterior motive" in making the traffic stop, *viz*, to search for illegal drugs, the stop nevertheless was permissible so long as there was in fact probable cause to believe that a traffic offense occurred. *Whren v. United States,* 517 U.S. 806 (1996); *United States v. Ferguson*, 8 F.3d 385 (6th Cir. 1993).

Defendant next argues that the officer took more time than was reasonably necessary to complete his actions attendant to a routine traffic stop. As an initial matter, only ten minutes elapsed from the time Melissa Moore's vehicle was stopped until she ultimately gave

consent to Sergeant Lewis for him to search her vehicle. Ten minutes is not an unreasonable amount of time to detain a driver with regard to a moving traffic violation; Sergeant Lewis testified that it normally requires 15 to 20 minutes to complete a routine traffic stop. Also, some of the ten minutes that elapsed between the stop and the driver's consent to search the vehicle was consumed by Sergeant Lewis giving directions to the driver and defendant after they asked for those directions. Far more importantly, immediately upon the initial contact between the officer and Ms. Moore, the officer knew that he was confronted with something beyond a mere moving traffic violation. Of course, Sergeant Lewis already had information from a narcotics detective that the occupants of this car had participated in a drug transaction and that the car contained 10 ounces of crack cocaine. Additionally, not only was the driver, Ms. Moore, nervous and agitated, she was actually crying, and she continued to cry throughout the duration of the traffic stop. As she handed her driver's license and registration to the officer, her hand visibly shook as she did so. To be sure, most drivers are at least a bit tense and nervous when stopped for a moving traffic violation, but Ms. Moore's reaction was far more than "a bit." Further, the officer observed that the defendant himself, who was merely a passenger, was acting peculiarly. Sergeant Lewis testified that the defendant was "overly-friendly," compared to the reaction of most passengers in a vehicle which has just been stopped for a minor traffic violation. Further, he also was visibly nervous and shaking, a rather incongruous manifestation in light of his extreme friendliness. The reactions of the driver and defendant were highly unusual, to say the least, and were calculated to cause anyone, much less a trained police officer, to become suspicious. At the

time he made these observations, Sergeant Lewis also noticed the strong odor of air freshener emanating from the vehicle. Of course, many people use air freshener in their vehicles, some times to mask the odor of pets, sometimes to hide the odor of a baby's messy diaper, but sometimes to mask the odor of illegal drugs. Also, the circumstances of Ms. Moore's presence at this particular location at 10:00 in the evening stuck Sergeant Lewis as unusual. In the course of obtaining her driver's license and other information, Sergeant Lewis learned that she was from Chuckey, Tennessee, *at least* a three-hour drive from Chattanooga. Ms. Moore told Sergeant Lewis that she was in Chattanooga to meet a friend at the Hamilton Place Mall. He then learned to his surprise that Ms. Moore had worked that day, at her employment in Chuckey, Tennessee, until 5:00 p.m.; thus she could not possibly have arrived in Chattanooga until 8:00 p.m. or later. At the time of the traffic stop, 10:10 p.m., she was *south* of the Hamilton Place Mall, and apparently lost, and she indicated that she was on her way back home to Greene County. Thus, Ms. Moore had driven three hours or more to Chattanooga for what had to be an extremely brief meeting with someone at the Hamilton Place Mall, and was then returning back to her home. Admittedly, law-abiding citizens can and do make lengthy drives for brief visits, but nevertheless it is a relatively unusual occurrence, especially at this time of day. When considered with everything else that Sergeant Lewis knew, this was another suspicious factor. Whether any one of these factors - the extreme nervousness of the driver, the nervousness of the passenger, and the odor of the air freshener, and the lengthy nighttime drive for such a brief visit - would have been *singly* sufficient to generate a reasonable suspicion that criminal activity had occurred or was

occurring is irrelevant; it is the *totality* of the circumstances, coupled with the deductions of a trained police officer based on these cumulative circumstances, that is determinative. *See, United States v. Arvizu*, 534 U.S. 266 (2002). And, of course, it must not be forgotten that Sergeant Lewis had information from a narcotics detective that the occupants of this car had just concluded a drug transaction and that the car contained 10 ounces of crack cocaine. Considering all these factors together, Sergeant Lewis had reasonable suspicion, based on articulable facts, that criminal activity had occurred or was occurring. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); see also, *United States v. Williams*, 962 F.2d 1218, 1223 (6th Cir. ) *cert*. denied, 506 U.S. 892 (1992).

His suspicions reasonably aroused by the totality of the circumstances, Sergeant Lewis asked the driver, Melissa Moore, for her consent to search the vehicle; Ms. Moore consented. During his search of the car, Sergeant Lewis noticed that the floor carpeting on the passenger side appeared that it had just been pulled back. He also discovered that the lining on the rear seat was held in place with a safety pin, as if the lining had recently been removed for some reason. However, Sergeant Lewis found nothing in the car.

Sergeant Lewis then asked both individuals if either of them had any contraband on them. Defendant said that he had some money, and he removed a roll of currency from his pocket, secured by a rubber band. Sergeant Lewis again asked if defendant had anything illegal on his person, and defendant answered that he did not. As all this was occurring, defendant kept putting his hands in his pockets, notwithstanding Sergeant Lewis' instructions to keep his hands out of his pockets. Ultimately, Sergeant Lewis determined to search

5

defendant's person and, to that end, he placed one of defendant's hands on top of the car, while placing his own hand on defendant's shoulder. At that point, defendant bolted and ran. He was tackled by Sergeant Lewis and another officer (who had arrived on the scene in the meantime), and was handcuffed. The ensuing search of defendant's person revealed 58 grams of crack cocaine in defendant's pants' pocket.

In view of the reasonable suspicion generated by the totality of the circumstances, as previously discussed, Sergeant Lewis was justified in making a pat-down search of defendant's person for weapons. *See, United States v. Hensley*, 469 U.S. 221 (1985); *Terry*, 392 U.S. at 29. Defendant persisted in putting his hands in his pockets notwithstanding Sergeant Lewis' instructions that he not do so, and of course the totality of the circumstances described above indicated rather strongly that defendant had just concluded a drug transaction. No citation of authority is required for the proposition that drug dealers frequently are armed. A pat-down search for weapons was entirely appropriate.

Defendant's sudden flight on foot translated the affair from one of reasonable suspicion under *Terry* to one of probable cause to make an arrest, and the search of defendant's person after his seizure was justified.

In conclusion to this point, Sergeant Lewis had probable cause to make the initial traffic stop. The traffic stop did not last an inordinate length of time. Based upon the totality of the circumstances, Sergeant Lewis had reasonable suspicion, based on articulable facts, that the occupants of the vehicle had committed or were committing a criminal offense. Sergeant Lewis was justified in making a pat-down search of defendant for weapons, and as

he attempted to do so, defendant suddenly ran, justifying his arrest and the subsequent search of his person which revealed 58 grams of crack cocaine. It is respectfully recommended that there is no basis to grant his motion to suppress evidence of the crack cocaine or the currency and therefore his motion to suppress should be denied.

With regard to the recording made by the video camera in Sergeant Lewis' car of the traffic stop itself, it was not viewed by this magistrate judge, basically because the attorneys indicated there was no need to do so. Regardless of the quality of the recording, Sergeant Lewis is competent to identify the people appearing in that recording, even if the recording itself is inadequate for that purpose. In other words, the quality of the recording goes to the weight of the evidence, and not its admissibility. It is therefore recommended that defendant's motion to exclude this recording be denied.

For all the foregoing reasons, it is respectfully recommended that the defendant's motion to suppress (Doc.56) be denied.[2]

Respectfully submitted,

    s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).