UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA )
)
V. ) No. 2:08-CR-16
) Jordan/Inman
MICHAEL MORRIS )
GARY MOORE )

**REPORT AND RECOMMENDATION**

This defendant is indicted for various offenses involving cocaine and crack cocaine. He previously filed a motion to suppress certain evidence which he anticipated the United States would introduce against him. (Doc. 56) An evidentiary hearing was held on July 10, 2008, and a report and recommendation was filed the following day, recommending that the motion to suppress be denied.

Defendant failed to file objections to that report and recommendation. However, he did file a "Motion to Reconsider" which has been addressed and granted to a limited extent in an order filed this day. He also filed another motion to suppress (Doc. 97) which is, in practical effect, the same as his first motion to suppress. However, his second motion to suppress will be addressed since the court has agreed to consider a video recording of the traffic stop that has now been filed as a belated exhibit. Therefore, this report and recommendation concerns defendant's second motion to suppress, (Doc. 97).

On September 27, 2007, defendant was a passenger in a vehicle driven by one of his co-defendants, Melissa Moore. A Chattanooga police officer effected a traffic stop, ultimately resulting

in the discovery on defendant's person of $425.00 in currency (wrapped in a rubber band) and 58 grams of crack cocaine.

Defendant argues: (1) that the traffic stop persisted for longer than was reasonably necessary to issue the driver a traffic citation, as a result of which all incriminating evidence discovered thereafter should be suppressed,[1]; (2) "that the initial traffic stop was not supported by probable cause and/or [sic] reasonable suspicion and that the ensuing detention and search of defendant were consequently tainted and unconstitutional;" and (3) that there was no legitimate basis to conduct the pat-down search of defendant's person that led to the discovery of the crack cocaine.

Also, defendant argued (in his first motion to suppress) that the video recording of the traffic stop is of such poor quality that it is impossible to identify any of the persons appearing in the recording, as a result of which the recording should be suppressed.

Sergeant Robert Lewis, an officer with the Chattanooga Police Department, was the only witness who testified.

During the evening hours of September 27, 2007, Sergeant Lewis observed a silver Chevrolet Malibu about which he had just received a communication from Detective Hixon of the Chattanooga Police Department. Specifically, Detective Hixon advised Sergeant Lewis that the occupants of this vehicle had just participated in a drug transaction and that there were 10 ounces of crack cocaine in the vehicle. Detective Hixon told Sergeant Lewis that he wanted the car stopped. Sergeant Lewis personally observed the vehicle run two successive stop signs. Not only was this testimony not contradicted in any way, Sergeant Lewis was an extremely creditable and forthcoming witness. He is believed, and nothing else in this regard need be said, other than to state that there clearly was

---

[1] *See, e.g., United States v. Mesa*, 62 F.3d 159 (6th Cir. 1995).

probable cause to believe a traffic violation had occurred. Even if Sergeant Lewis had an "ulterior motive" in making the traffic stop, *viz*, to search for illegal drugs, the stop nevertheless was permissible so long as there was in fact probable cause to believe that a traffic offense occurred. *Whren v. United States,* 517 U.S. 806 (1996); *United States v. Ferguson*, 8 F.3d 385 (6th Cir. 1993).

Defendant next argues that the officer took more time than was reasonably necessary to complete his actions attendant to a routine traffic stop. As an initial matter, only ten minutes elapsed from the time Melissa Moore's vehicle was stopped until she ultimately gave consent to Sergeant Lewis for him to search her vehicle. Ten minutes is not an unreasonable amount of time to detain a driver with regard to a moving traffic violation; Sergeant Lewis testified that it normally requires 15 to 20 minutes to complete a routine traffic stop. Also, some of the ten minutes that elapsed between the stop and the driver's consent to search the vehicle was consumed by Sergeant Lewis giving directions to the driver and defendant after they asked for those directions. Far more importantly, immediately upon the initial contact between the officer and Ms. Moore, the officer knew that he was confronted with something beyond a mere moving traffic violation. Of course, Sergeant Lewis already had information from a narcotics detective that the occupants of this car had participated in a drug transaction and that the car contained 10 ounces of crack cocaine. Additionally, not only was the driver, Ms. Moore, nervous and agitated, she was actually crying, and she continued to cry throughout the duration of the traffic stop. As she handed her driver's license and registration to the officer, her hand visibly shook as she did so. To be sure, most drivers are

3

at least a bit tense and nervous when stopped for a moving traffic violation, but Ms. Moore's reaction was far more than "a bit." Further, the officer observed that the defendant himself, who was merely a passenger, was acting peculiarly. Sergeant Lewis testified that the defendant was "overly-friendly," compared to the reaction of most passengers in a vehicle which has just been stopped for a minor traffic violation. Further, he also was visibly nervous and shaking, a rather incongruous manifestation in light of his extreme friendliness. The reactions of the driver and defendant were highly unusual, to say the least, and were calculated to cause anyone, much less a trained police officer, to become suspicious. At the time he made these observations, Sergeant Lewis also noticed the strong odor of air freshener emanating from the vehicle. Of course, many people use air freshener in their vehicles, some times to mask the odor of pets, sometimes to hide the odor of a baby's messy diaper, but sometimes to mask the odor of illegal drugs. Also, the circumstances of Ms. Moore's presence at this particular location at 10:00 in the evening stuck Sergeant Lewis as unusual. In the course of obtaining her driver's license and other information, Sergeant Lewis learned that she was from Chuckey, Tennessee, *at least* a three-hour drive from Chattanooga. Ms. Moore told Sergeant Lewis that she was in Chattanooga to meet a friend at the Hamilton Place Mall. He then learned to his surprise that Ms. Moore had worked that day, at her employment in Chuckey, Tennessee, until 5:00 p.m.; thus she could not possibly have arrived in Chattanooga until 8:00 p.m. or later. At the time of the traffic stop, 10:10 p.m., she was *south* of the Hamilton Place Mall, and apparently lost, and she indicated that she was on her way back home to Greene County. Thus, Ms. Moore had driven three hours or more to

4

Chattanooga for what had to be an extremely brief meeting with someone at the Hamilton Place Mall, and was then returning back to her home. Admittedly, law-abiding citizens can and do make lengthy drives for brief visits, but nevertheless it is a relatively unusual occurrence, especially at this time of day. When considered with everything else that Sergeant Lewis knew, this was another suspicious factor. Whether any one of these factors - the extreme nervousness of the driver, the nervousness of the passenger, the odor of the air freshener, and the lengthy nighttime drive for such a brief visit - would have been *singly* sufficient to generate a reasonable suspicion that criminal activity had occurred or was occurring is irrelevant; it is the *totality* of the circumstances, coupled with the deductions of a trained police officer based on these cumulative circumstances, that is determinative. *See, United States v. Arvizu*, 534 U.S. 266 (2002). And, most importantly of all, it must be recalled that Sergeant Lewis had information from a narcotics detective that the occupants of this car had just concluded a drug transaction and that the car contained 10 ounces of crack cocaine. Considering all these factors together, Sergeant Lewis had reasonable suspicion, based on articulable facts, that criminal activity had occurred or was occurring. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); see also, *United States v. Williams*, 962 F.2d 1218, 1223 (6th Cir. ) *cert*. denied, 506 U.S. 892 (1992).

His suspicions reasonably aroused by the totality of the circumstances, Sergeant Lewis asked the driver, Melissa Moore, for her consent to search the vehicle; Ms. Moore consented. During his search of the car, Sergeant Lewis noticed that the floor carpeting on the passenger side appeared that it had just been pulled back. He also discovered that the lining on the rear

5

seat was held in place with a safety pin, as if the lining had recently been removed for some reason. However, Sergeant Lewis found nothing in the car.

Sergeant Lewis then asked both individuals if either of them had any contraband on them. Defendant said that he had some money, and he removed a roll of currency from his pocket, secured by a rubber band. Sergeant Lewis again asked if defendant had anything illegal on his person, and defendant answered that he did not. As all this was occurring, defendant kept putting his hands in his pockets, notwithstanding Sergeant Lewis' instructions to keep his hands out of his pockets. Ultimately, Sergeant Lewis determined to search defendant's person and, to that end, he placed one of defendant's hands on top of the car, while placing his own hand on defendant's shoulder. At that point, defendant bolted and ran. He was tackled by Sergeant Lewis and another officer (who had arrived on the scene in the meantime), and was handcuffed. The ensuing search of defendant's person revealed 58 grams of crack cocaine in defendant's pants' pocket.

Defendant argues that there was no legal justification for the officer to conduct a pat-down search of his person. In this regard, he points out that the video recording of the traffic stop shows that the officer did not pat-down the defendant for approximately fifteen minutes, during which time the officers thoroughly searched the vehicle. Defendant suggests that this indicates that the officers did not truly believe that defendant was armed and dangerous, as a result of which the pat-down search was unconstitutional, relying on *United States v. Wilson*, 506 F.3d 488 (6th Cir. 2007).

*Wilson* is easily distinguishable from the facts before this court. In *Wilson,* the police

6

officer made a routine traffic stop for a relatively minor offense. The officer knew only that (1) a very minor traffic offense had been committed, (2) the driver acknowledged to the officer that he had been convicted on a "gun charge," and (3) both the diver and his passenger acted "nervous." The officer knew absolutely *nothing* about the passenger, yet he performed a pat-down search anyway, ostensibly to determine if the passenger was armed, discovering a quantity of drugs when he did so. The Court of Appeals held that the officer could not conduct a pat-down search of the passenger absent specific and articulable facts that would support a reasonable suspicion that the passenger might be armed. The mere fact that the individual was a passenger in a vehicle driven by a convicted felon, and that he was "nervous," would not reasonably suggest that he might be armed.

Here, however, the Chattanooga police officer had information from another officer that the occupants of the car in which defendant was a passenger had just concluded a drug transaction and that the car contained ten ounces of crack cocaine. The Court of Appeals has aptly noted that guns are "tools of the drug trade," *United States v. Arnott*, 704 F.2d 322 (6th Cir. 1983); a failure to conduct a pat-down search of defendant would have been incredibly foolish and a potentially deadly omission.

That the officer did not conduct his pat-down search for fifteen minutes or so is irrelevant as far as this motion to suppress is concerned. The fact remains that this officer had reliable information from a fellow police officer that the occupants of this car had just concluded a drug transaction and that the vehicle contained ten ounces of crack cocaine. Thus, defendant and his driver were drug dealers, and it was distinctly possible that one or

7

both of them could have been armed. The delay in conducting the pat-down search doubtlessly would not have been mentioned by this defendant had he been armed and a firearm discovered; only because a firearm was not found does defendant attempt to suggest that this officer did not really believe he was armed. Perhaps this officer could be criticized for delaying the pat-down search as long as he did from the perspective of prudent police work, but once again that has nothing to do with the validity of the search as far as the Fourth Amendment is concerned.

Moreover, the officer actually had probable cause to search the vehicle and its occupants. Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "The probable cause requirement . . . is satisfied if the facts and circumstances are such that a reasonable prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *United States v. Beasase*, 521 F.2d 1306, 1307 (6th Cir. 1975). Probable cause may be established through information from any reliable source or sources. *Draper v. United States*, 358 U.S. 307, 313 (1959). The officer had just been told by a narcotics detective that the occupants of the car had just concluded a drug transaction and that the car contained ten ounces of crack cocaine. This provided probable cause to believe that defendant and his driver were in possession of crack cocaine. When police officers have probable cause to believe that a vehicle contains contraband, they may search the entire vehicle and any contents located within it. *United States v. Mans*, 999 F.2d 966, 969 (6th Cir.) *cert.* denied, 510 U.S. 999 (1993). In such

8

circumstances, law enforcement may conduct a warrantless vehicle search "that is thorough as a magistrate could authorize in a warrant." *United States v. Ross*, 456 U.S. 798 (1982). If a police officer has probable cause to search a vehicle, he may inspect the passenger's belongings found in that car that are capable of concealing the object of the search, *Wyoming v. Howton*, 526 U.S. 295, 306 (1999), which of course would extend to the persons of the passengers themselves.

Therefore, the search of defendant's person was justified either as a pat-down search for weapons as part of a legitimate *Terry* stop, or as a search based upon probable cause to believe that the car contained illegal drugs. The search of defendant's person was justified under the Fourth Amendment, and it is recommended that his motion to suppress (Doc. 97) be denied.[2]

Respectfully submitted,

       s/ Dennis H. Inman
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

9