IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:08-CR-16 |
| | ) | |
| GARY MOORE | ) | |

## **MEMORANDUM AND ORDER**

This criminal case is before the court on the defendant's objections to the magistrate judge's report and recommendation [doc. 110]. The defendant moved to suppress the evidence (about 58 grams of crack cocaine) seized from him during a traffic stop in Chattanooga, Tennessee [docs. 56 and 97]. In his report and recommendation, the magistrate judge found that "the search of the defendant's person was justified either as a pat-down search for weapons as part of a legitimate *Terry* stop, or as a search based upon probable cause to believe that the car contained illegal drugs." Doc. 108 at 9. The government has responded [doc. 116], and a transcript of the suppression hearing has been prepared [doc. 102]. The parties also have supplied the court with the video of the traffic stop which is at issue in this case. For the reasons discussed below, the defendant's objection to the finding related to the attempted search of his

person will be granted and the evidence seized from his person will be suppressed.

## I. Standard of Review

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

## II. Procedural Background

The defendant initially was represented by a CJA panel attorney who filed a motion to suppress the evidence [doc. 56]. Following the suppression hearing, the magistrate judge filed a report and recommendation that the defendant's motion to suppress evidence be denied [doc. 63]. Shortly thereafter, the defendant's attorney was allowed to withdraw and a new attorney was appointed to represent the defendant [doc. 79]. The grand jury returned a superseding indictment [doc. 88], and the defendant was re-arraigned [doc. 89]. No objections to the report and recommendation were filed by the defendant's original or new attorney, and this court entered an order adopting the report and recommendation [doc. 91].

2

The defendant's new attorney then filed a new motion to suppress evidence arguing that the video of the traffic stop shows that the seizure of the evidence was unconstitutional [doc. 97]. The magistrate judge agreed to consider the video evidence and then entered a second report and recommendation that the defendant's second motion to suppress be denied [doc. 108]. It is this report and recommendation that is now before the court.

### III. Factual Background

The court has reviewed the transcript of the suppression hearing and the video and finds the following facts. On September 27, 2007, Officer Robert Lewis of the Chattanooga police department was contacted "previously" by Detective Hixon[1] and told that they were conducting surveillance on a silver Malibu and observed a drug transaction. Detective Hixon asked that the vehicle be stopped as it was believed that it contained ten ounces of crack cocaine.

Officer Lewis saw the vehicle and observed it as it failed to stop at two successive stop signs. Officer Lewis activated his blue lights and stopped the vehicle. The driver was Melissa Moore and the defendant Gary Moore was the only passenger. Officer Lewis explained the reason for the stop to Ms. Moore and asked for her driver's license, registration, and proof of insurance. He asked

---

[1] The transcript has the detective's name as "Dixon." Doc. 102 at 22. Later in the hearing, however, the detective's name was corrected to "Hixon." Doc. 102 at 29.

her to stand at the side of the road away from the traffic. Ms. Moore was visibly crying.

After checking Ms. Moore's license, Officer Lewis asked her if she had any firearms, money or contraband in the car or on her person. Ms. Moore said she did not, and Officer Lewis asked if she would consent to a search of her vehicle. Ms. Moore agreed to the search. This exchange occurred about ten minutes after the stop.

Officer Lewis then approached the passenger, defendant Gary Moore, and asked him if he had a driver's license because Ms. Moore seemed too upset to drive. He also asked the defendant to get out of the vehicle. The defendant produced his license, and Officer Lewis told him to stand with Ms. Moore between the patrol car and Ms. Moore's vehicle, out of the way of traffic. Officer Lewis testified that he thought it was unusual that the defendant seemed "overly friendly" while Ms. Moore was crying. Officer Lewis asked the defendant <u>only once</u> to keep his hands out of his pockets and asked him if he had any firearms, money or contraband on his person. The defendant pulled a roll of money ($425.00) from his front pants pocket. The roll was secured with a rubber band. As Officer Lewis walked away toward Ms. Moore's vehicle, he told another officer standing with Ms. Moore that he had not "patted down" the defendant so the officer should keep an eye on him. This exchange took about two minutes.

For the next thirty-one minutes, the officers thoroughly searched the vehicle. During this time, the video shows the defendant and Ms. Moore standing in front of the patrol car. The court has reviewed the video several times and it does not appear that the defendant ever put his hands in his pockets or did anything suspicious. About twenty-seven minutes into the search, an officer (probably Officer Lewis) stated something to the effect: " I think I'm going to search him in a second – can't hurt." Then, about four minutes later, an officer (again, probably Officer Lewis) said: ". . . go ahead and check him real quick."

After searching the vehicle, the officers had not been able to find any controlled substances, firearms, or money, but the officers noticed that the carpeting was lifted up on the passenger side and that the lining of the back seat was held up with a safety pin. Officer Lewis approached the defendant and asked him once again if he had any of those items on his person. Again, the defendant said no. At that point, Officer Lewis told the defendant to place his hands on the hood of the patrol car and to spread his legs. The defendant began to comply with Officer Lewis's request, but then turned and tried to flee. After he was taken down only a few feet away, the crack cocaine was found in his pocket. He and Ms. Moore were arrested.

## IV. Fourth Amendment Violation

The defendant raises two specific objections to the report and recommendation. The defendant first complains that the search of the vehicle

"was way beyond the acquiescence of the driver." Nevertheless, Ms. Moore consented to the search and the officers could thoroughly search the vehicle and its contents. *See Wyoming v. Houghton*, 526 U.S. 295, 307 (1999).

The defendant's second objection concerns the attempted search of the defendant's person. He argues that the search was unreasonable because the officers clearly did not believe that the defendant was armed or dangerous and there was no probable cause to support the search. The court agrees with both the defendant's contentions.

First, the *Terry* doctrine allows an officer to conduct a patdown for weapons during a legitimate traffic stop if the officer has a reasonable belief that the person is armed and presently dangerous. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968); *see also Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979). As the Court stated in *Ybarra*, the officer's reasonable belief "must form the predicate to a patdown of a person for weapons." *Ybarra*, 444 U.S. at 93. "Nothing in *Terry* can be understood to allow . . . any search whatever for anything but weapons." *Id.* at 93-94. In this case, whatever reasonable concern for his safety Officer Lewis could articulate at the beginning of the stop dissipated during the nearly forty-three minutes he allowed the defendant to sit in Ms. Moore's vehicle and stand along the roadside during the search of that vehicle. The court finds that Officer Lewis's attempt to search the defendant's person was not related to any concern for "officer safety" and the search cannot be justified as a patdown for weapons.

6

Second, the court finds that Officer Lewis did not have probable cause to search the defendant. The government argues and the magistrate judge found, based on Detective Hixon's information, that Officer Lewis had probable cause to search the vehicle at the time it was stopped and, by extension, the occupants. The court finds that this is an incorrect statement of the law.

In *Wyoming v. Houghton*, 526 U.S. 295 (1999), a case relied on by both the government and the magistrate judge, the Supreme Court held that "police officers with probable cause to search a car may inspect passenger's belongings found in the car that are capable of concealing the object of the search." *Id.* at 307. However, the Court very specifically declined to extend the right to search to the passengers found in the car. Citing to *United States v. Di Re*, 332 U.S. 581 (1948) and *Ybarra*, the Court found that individuals, including passengers in a vehicle, have a "unique, significantly heightened protection" from searches of their person. *Houghton*, 526 U.S. at 303. Then, citing to *Terry*, the Court explained that a person is entitled to this heightened protection because "[e]ven a limited search of the outer clothing . . . constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 24-25 (1968)).

7

Furthermore, the court finds that Officer Lewis did not have probable cause to search the vehicle, let alone the passengers, when he first stopped it. When Officer Lewis stopped Ms. Moore's vehicle he had a reasonable suspicion based on Detective Hixon's information that the vehicle had been involved in a drug transaction and contained contraband.[2] The court finds, however, that nothing about the stop could have raised Officer Lewis's suspicion to the level of probable cause. Officer Lewis testified that there were several factors in addition to Detective Hixon's information which raised his suspicions: Ms. Moore was crying; the defendant was "overly friendly"; the defendant had a roll of money in his pocket held together with a rubber band; there was an odor of air freshener in the vehicle;[3] the explanation of the purpose of their trip was suspicious; the carpet on the passenger side was pulled up; and the lining of the back seat was loose and held up with a safety pin. Under a totality of circumstances, the court finds that these factors would have supported Officer Lewis's reasonable suspicion that there was contraband in the vehicle.

However, the court finds that much of that suspicion was dispelled by the fact that no contraband was located in the vehicle. Detective Hixon's

---

[2] Under *Whitely v. Warden*, 401 U.S. 560 (1971), an officer may rely and act on another officer's information as long as the initiating officer had the requisite probable cause or reasonable suspicion. *Id.* at 568. In this case, the government made no effort to establish that the information from Detective Hixon was sufficient to give Officer Lewis probable cause to stop the vehicle, search it, and arrest the occupants.

[3] The court finds that this "suspicious" factor is irrelevant in this case because there was no evidence that the occupants of the vehicle had been using marijuana or another controlled substance with a distinctive odor.

information was incorrect; ten ounces of crack cocaine were not found in the vehicle. Further, nothing Ms. Moore or the defendant did during the stop would have heightened Officer Lewis's suspicion to probable cause. The court has thoroughly reviewed the video and the events leading up to the attempted search and finds that neither person made any furtive movements or said anything that would have given the officer probable cause to believe that the defendant had contraband in his pocket. Although Officer Lewis might have reasonably believed that there was contraband in the vehicle or on one of the occupants, he had no authority to attempt to search the defendant's person based on that suspicion. The crack cocaine that was found on the defendant was a direct result of the unlawful attempt to search the defendant.

## V. Conclusion

Therefore, the court finds the defendant's objection to the report and recommendation concerning the attempted search of his person well taken. It is hereby **ORDERED** that this objection to the report and recommendation is **GRANTED**, and the defendant's motions to suppress evidence are **GRANTED**.

ENTER:

*s/ Leon Jordan*
United States District Judge